IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **FIRST MARINER BANK,** | : |
|     Appellant | : |
| v. | :    Civil Action No. RWT 09-0053 |
| **STEVEN R. JOHNSON et al.**, | : |
|     Appellees | : |

## MEMORANDUM OPINION

This bankruptcy appeal concerns the interaction between two provisions of the Bankruptcy Code, 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). Specifically, the Court is asked to decide whether, under § 1322(b)(2), Chapter 13 debtors can void a lien on their residential property if there is insufficient equity in the residence to cover any portion of that lien. For the reasons below, the Court concludes that they can, and accordingly, the Order of the Bankruptcy Court will be affirmed.

## I. BACKGROUND

The parties in the bankruptcy proceeding stipulated to the relevant facts. Appellees Steven Roderick Johnson and Theresa Antoinette Johnson (the "Johnsons") filed a Chapter 13 Voluntary Petition on July 2, 2008, in the United States Bankruptcy Court for the District of Maryland. At the time the bankruptcy petition was filed, the Johnsons' principal residence, located at 14007 Christian Street, Upper Marlboro, Maryland, 20772 (the "Property"), had a fair market value of $555,000. The Property was subject to a first lien held by Wells Fargo Bank, N.A., which filed a proof of claim in the amount of $661,851.62. Appellant First Mariner Bank ("First Mariner") held a second lien

on the Property in the original amount of $83,000, of which approximately $81,987.27 was outstanding.

On October 6, 2008, the Johnsons filed a motion to avoid the lien held by Appellant First Mariner. The bankruptcy court held a hearing on the motion on December 18, 2008, and concluded that the lien was avoidable pursuant to 11 U.S.C. § 506(a) because the amount owed on the note secured by the first deed of trust exceeds the value of the Property, citing a prior decision of this Court, *Johnson v. Asset Management Group, LLC*, 226 B.R. 364 (D. Md. 1998) (Garbis, J.). On December 24, 2008, First Mariner filed its notice of appeal. Appellant's brief was filed on January 27, 2009. Appellees have not filed a response.

## II. STANDARD OF APPELLATE REVIEW

When a district court reviews a bankruptcy court's final order, the district court acts as an appellate court. Accordingly, legal conclusions are reviewed *de novo*, whereas findings of fact may be set aside only if clearly erroneous. *See Banks v. Sallie May Serv. Corp.*, 299 F.3d 296, 300 (4th Cir. 2002); *Johnson*, 226 B.R. at 365; Fed. R. Bankr. P. 8013.

## III. DISCUSSION

The first section of the Bankruptcy Code pertinent to this appeal, 11 U.S.C. § 506(a), applies to bankruptcies under all chapters, and sorts creditors' allowed claims against the debtor into secured and unsecured claims:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a *secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an *unsecured claim* to the extent that the value of

> such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. . . .

11 U.S.C. § 506(a)(1) (emphasis added). The second relevant provision, 11 U.S.C. § 1322(b)(2), applies only to Chapter 13 bankruptcies. It states that a debtor's Chapter 13 plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). Appellant argues that this "antimodification" provision applies to its lien, and therefore that the bankruptcy court erred in concluding that it was void as a matter of law.

In *Johnson*, the court addressed a factual scenario identical to that presented here. The debtor owned a home encumbered by two mortgages, and the amount owed on the first lien was greater than the value of the home. The court held that the Supreme Court's decision in *Nobleman v. American Savings Bank*, 508 U.S. 324 (1993),[1] did not prohibit the avoidance of the second lien, because it was completely unsecured at the time the bankruptcy petition was filed.

Appellant argues that *Johnson* was wrongly decided, placing much emphasis on a single sentence in the *Nobleman* opinion: "By virtue of its mortgage contract with petitioners, the bank is indisputably the holder of a claim secured by a lien on petitioner's home." First Mariner interprets this sentence as supporting its assertion that § 1322(b)(2) prohibits the modification of *any* claim secured by a lien on real property that is the debtor's principal residence, apparently equating the

---

[1] *Nobleman* prohibited the bifurcation of a single undersecured homestead lien into secured and unsecured components, whereby the unsecured component would be "stripped down," essentially reducing the amount of the lien to the fair market value of the collateral. When a creditor's lien is at least *partially* secured, § 506(a) does not operate to eliminate the creditor's rights in the unsecured claim component. *Nobleman,* 508 U.S. at 328-29. However, *Nobleman* does not prohibit the "stripping off" of completely unsecured junior homestead liens such as that held by Appellant. *See Johnson*, 226 B.R. at 369.

phrases "secured by a lien on real property" and "secured claim." Appellant also argues that the *Johnson* court did not give proper weight to the legislative intent behind § 1322(b)(2) as recognized by Justice Stevens' concurrence in *Nobleman* – that residential mortgages are intended to have "favorable treatment" in order to "encourage the flow of capital into the home lending market." *Nobleman*, 508 U.S. at 332 (Stevens, J., concurring).

Appellant's argument fails for two reasons. First, the antimodification provision in § 1322(b)(2) does not apply because Appellant's lien is not a "secured claim" within the meaning of the Bankruptcy Code. Justice Thomas' analysis in *Nobleman* clearly indicated that the proper starting point in this analysis is the valuation in § 506(a), *not* the exception contained in § 1322(b)(2). *See Bartee v. Tara Colony Homeowners Ass'n*, 212 F.3d 277, 290 (5th Cir. 2000); *Tanner v. FirstPlus Fin., Inc.*, 217 F.3d 1357, 1360 (11th Cir. 2000) ("the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence"). Without first demonstrating that it has an allowed secured claim, a creditor cannot invoke the antimodification protection in § 1322(b)(2). *See Bartee*, 212 F.3d at 290.

"Lawyers [and laypersons] often think of any claim for repayment of a mortgage loan as a 'secured claim' whether or not the mortgagee could actually realize anything at a foreclosure sale." *Lane v. W. Interstate Bancorp*, 280 F.3d 663, 665 (6th Cir. 2002). However, this is incorrect as a matter of bankruptcy law. "Whether a lienholder has a 'secured claim' or an 'unsecured claim,' in the sense in which those terms are used in the bankruptcy code, depends on whether the lienholder's interest in the collateral has economic value." *Id.* at 664. Therefore, a second mortgagee, like

Appellant, whose lien on a Chapter 13 debtor's property is "completely under water," holds an *unsecured claim*, regardless of the fact that the second mortgage was secured by a *lien* on the debtor's principal residence. *Id.* Though paradoxical, a lienholder may be *both* the holder of a "claim secured only by a security interest in real property that is the debtor's home" *and* the holder of an "unsecured claim" if that security interest is devoid of any actual economic value. "[O]nly the rights secured by some remaining equity will be protected from modification." *Tanner*, 217 F.3d at 1360.

Therefore, because the first lien on the Property exceeds the equity remaining in the home, Appellant's secondary lien is wholly unsecured, and its interests may be modified by the Chapter 13 plan, pursuant to § 1322(b)(2). This conclusion is consistent with all six Courts of Appeals to have directly considered the issue, as well as two Bankruptcy Appellate Panels.[2] *See Zimmer v. PSB Lending Corp.*, 313 F.3d 1220 (9th Cir. 2002); *Lane*, 280 F.3d 663; *Pond v. Farm Specialist Realty*, 252 F.3d 122 (2d Cir. 2001); *Tanner*, 217 F.3d 1357; *Bartee*, 212 F.3d 277; *McDonald v. Maser Fin., Inc.*, 205 F.3d 606 (3d Cir. 2000); *Domestic Bank v. Mann*, 249 B.R. 831 (B.A.P. 1st Cir. 2000); *Lam v. Investors Thrift*, 211 B.R. 36 (B.A.P. 9th Cir. 1997).

Appellant's policy argument similarly misses the mark. Although Justice Stevens did recognize a congressional policy in favor of promoting home lending, other courts have interpreted

---

[2] Appellant attempts to rely on *Dewsnup v. Timm*, 502 U.S. 410 (1992) and *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir. 2001) (relying upon *Dewsnup*) in support of the opposite outcome. However, *Ryan* and *Dewsnup* involved Chapter 7 bankruptcies, and are therefore inapplicable to the situation presently before the Court. "The rationales advanced in the *Dewsnup* opinion for prohibiting lien stripping in Chapter 7 bankruptcies . . . have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12, and 13, where lien stripping is expressly and broadly permitted, subject only to very minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters." *Bartee*, 212 F.3d at 291 n.21.

this as applying only to first or purchase-money mortgages. *See Zimmer*, 313 F.3d at 1227. "Because second mortgages are rarely used to purchase a home, making wholly unsecured second mortgages subject to the anti-modification clause would have at best a minimal impact in encouraging home building and buying." *McDonald*, 205 F.3d at 613; *see also Bartee*, 212 F.3d at 293 (explaining that because secondary lending is "targeted primarily at personal spending, allowing wholly undersecured second mortgages under the umbrella of the anti-modification clause would be unlikely to positively impact home building and buying" and would "upset the delicate balance that Congress established between rights of purchase-money lenders and over-extended debtors"). This Court agrees with the other courts to have considered the issue, and rejects Appellant's contention that permitting its lien to be stripped off pursuant to a Chapter 13 plan would create an "absurd result."

## IV. CONCLUSION

For the foregoing reasons, the Court will affirm the bankruptcy court's Order granting Appellee's Motion to Avoid First Mariner Bank's Lien.  A separate Order follows.

Date:   September 2, 2009                                         /s/
                                                                  Roger W. Titus
                                                                  United States District Judge